## PETITION OF THE TOWN OF PORTSMOUTH.

The superior court has jurisdiction to re-examine the returns of the election of road commissioners, and declare the result, and not merely to direct the court of common pleas so to do.

The judgment of the superior court, reversing the decision of the court of common pleas, is, in such case, the final and efficient judgment upon the returns; and the *mandamus* to the court of common pleas is that the record there be corrected.

A road commissioner, declared elected by the court of common pleas, after reversal of that decision by the superior court, but before the declaration, by the court of common pleas of the election of another person, in obedience to the *mandamus* of the superior court, was *held* to be no longer an officer *de facto*, and his acts, as such, were void.

PETITION, for the discontinuance of a road.

This petition, for the discontinuance of part of. Rock Street, in the town of Portsmouth, was referred to the road commissioners, at the September term, 1847. The hearing was upon the 4th day of January, 1848, and at the February term, 1848, the commissioners reported in favor of discontinuing the road. The report was signed by John Scammon, John Page and True F. Locke, as road commissioners. To this report various objections were filed, but the only one which is material was as follows:

" Because John Scammon, who acted as one of the road commissioners, was not legally elected, and after a reference of said petition to said commissioners, and before any hearing was had thereon by said commissioners, such proceedings were had in the superior court of judicature that said court re-examined the returns of the votes for said commissioners, and issued a *mandamus* to this court, directing this court, at this term, to declare that said Scammon was not elected one of the road commissioners; and this court has accordingly declared that said Scammon was not duly elected one of said road commissioners."

This statement of facts was not controverted.

*Emery*, for the petitioners, contended that, at the hearing on the 4th day of January, Scammon was an officer *de facto*, acting under color of an election, and, therefore, his acts could not be questioned, except in suits where he was a party. *Tucker* v. *Aiken*, 7 N. H. Rep. 113. By the record, at the September term, 1827, he appeared to be duly elected, and it was the duty of the court to commit the matter of this petition to him. His power dated from his commission, and he properly acted under it until it was vacated by the court of common pleas. During that time he was the legal officer. He did not cease to be such until the action of that court upon the *mandamus* of the superior court.

*Hatch* and *French*, for the defendant.

Scammon acted after the *mandamus* issued, and in known violation of the judgment of this court. In obedience to the *mandamus*, the court of common pleas has declared that Scammon never was elected. This duty was imperative upon the court of common pleas; the judgment of this court was effective upon the first day of the term. Scammon, then, was never, in any sense, a commissioner, though he acted as such, and his report should not be received.

WILCOX, J. Mr. Scammon, one of the persons to whom, as road commissioners, the petition in this case was referred, was, in the first instance, declared duly elected as a road commissioner, upon an examination made by the court of common pleas, at its September term, 1847, of the votes then returned to that court, as prescribed by law. But the matter was re-examined in this court, at its December term, 1847, when a different result was obtained; and it was determined that Scammon was not duly elected, but that another person was; and a *mandamus* issued to the court of common pleas, directing them so to declare, which was done at its February term, 1848.

It has long been settled that the acts of an officer *de facto*, holding an office by color of an election or appointment, are valid as to the public and third persons, and cannot be called in question, except in some proceeding against the officer himself. In elective offices, the votes are to be sorted, counted and returned, and the result declared by some officer or tribunal. That declaration is necessarily final, so long as it stands unreversed; and the court or jury are not to count over the votes and canvass the rights of voters again, every time the rights of that officer are brought in question. And while that declaration remains in force it would seem that it should protect the officer himself.

But there may be a re-examination of the matter, and when a mistake occurs, and a person is wrongfully declared elected, proceedings may be instituted to remove him from the office which he, in fact, usurps or holds without right. Until judgment of ouster or amotion is finally pronounced, he still remains in office, and his acts are valid. Such judgment has been pronounced in this case, and the only question is whether the final and efficient judgment was the judgment pronounced in this court, at its December term, 1847, or the declaration of the court of common pleas, made at its February term, 1848; and it is understood to have been considered and determined, in the case of Mr. Scammon, that this court was not bound merely to direct the court of common pleas to re-examine the matter and declare the result, but that it could, in the plenitude of its jurisdiction, re-examine the matter itself, and declare the result. Such were the proceedings. The returns were here examined, and the final and efficient judgment here pronounced; and the *mandamus* to the court of common pleas was only that the record there should correspond with the fact and truth of the case. Judgment of amotion from office was, in effect, then pronounced against Mr. Scammon, at the December term of this court, 1847, and he cannot, therefore, be regarded after that as an officer *de facto*, and the report

must, therefore, be rejected, and the proceedings referred again to the road commissioners.